# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| SHANE MILLER, | § § § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § § | CIVIL ACTION NO. 4:20-CV-00606 |
| | § | Judge Mazzant |
| EWING BUICK-PLANO, LP d/b/a EWING BUICK GMC | § § § | |
| *Defendants*. | § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Compel Arbitration (Dkt. #9). Having considered the motion and the relevant pleadings, the Court finds that Defendant's motion should be **GRANTED**.

### BACKGROUND

This dispute arises out of a former employer-employee relationship between Plaintiff and Defendant. During his employment with Defendant, Plaintiff worked as the dealership's body shop manager.

On July 2, 2019, Plaintiff requested time off from his immediate supervisor, Jeff Gaden ("Gaden"). Plaintiff sought leave to take care of his father. Plaintiff worked half-days until July 28, 2019 and took a full day off on July 29, 2019. On August 2, 2019, Defendant terminated Plaintiff's employment. Defendant cited Plaintiff's performance as the reason for termination. Plaintiff subsequently brought suit under the Family and Medical Leave Act ("FMLA").

On February 19, 2021, Defendant filed the present motion (Dkt. #9). On March 1, 2021, Plaintiff filed a corrected response (Dkt. #11). On March 4, 2021, Defendant filed a reply (Dkt. #12).

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), parties to a contract may agree that an arbitrator, rather than a court, will resolve disputes arising out of the contract. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). The FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (cleaned up). Thus, the FAA establishes "a liberal federal policy favoring arbitration agreements" and "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012).

Although there is a strong federal policy favoring arbitration, the policy "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 516 n. 5 (5th Cir. 2019) (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). The FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt*, 489 U.S. at 478. Rather, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582

(1960). The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt*, 489 U.S. at 478.

When considering a motion to compel arbitration, courts apply a two-step framework. First, the Court must determine "whether the parties entered into *any arbitration agreement at all*." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). "This first step is a question of contract formation only—did the parties form a valid agreement to arbitrate some set of claims." *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 2620 (2018). This initial question is for the Court. *Kubala*, 830 F.3d at 201. To determine whether there is a valid agreement to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). Under Texas law, a binding contract requires: "(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *In re Capco Energy, Inc.*, 669 F.3d 274, 279-80 (5th Cir. 2012).

If the Court finds that there is a valid agreement to arbitrate, it proceeds to the second question: whether the claim at issue is covered by the arbitration agreement. *IQ Prods.*, 871 F.3d at 348. In the second step, the Court must determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Webb*, 89 F.3d at 258 (5th Cir. 1996) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). This second question usually is for the Court, unless the arbitration clause contains a valid delegation clause for an arbitrator to determine whether the claim falls within the arbitration agreement. *Kubala*, 830 F.3d at 202.

The party seeking to compel arbitration must prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012). Once the Court determines that there is a valid agreement to arbitrate, the strong federal policy favoring the enforcement of the arbitration agreements applies, and all ambiguities must be resolved in favor of arbitration. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). As the Supreme Court has stated: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Because of the strong presumption in favor of arbitration, the party opposing arbitration bears the burden to demonstrate either that the agreement is invalid or that the claims are outside of the agreement's scope. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

## ANALYSIS

Defendant asks this Court to compel arbitration and to stay further proceedings. Alternatively, Defendant seeks dismissal of Plaintiff's claims without prejudice. Plaintiff opposes arbitration and insists that no valid agreement to arbitrate exists between the parties.

### I. Existence of Agreement to Arbitrate

Defendant asserts that the arbitration agreement at issue—found in Ewing Automotive Group's Dispute Resolution Program (the "Plan")—is valid and enforceable under Texas law. Defendant's argument that it "assumed, among other things, the contractual rights and obligations of Ewing Buick Company[, the original signatory on the plan,] as part of a duly authorized legal succession[,]" (Dkt. #9 at p. 12) (internal quotation omitted), is twofold. First, Defendant argues

that it is a successor of Ewing Buick Company. Second, Defendant claims that it assumed rights under the Plan due to the "formal entity conversion."

Plaintiff responds that "[t]he Plan did not identify Defendant, but Defendant nevertheless seeks, as a party not named in the arbitration agreement, to compel arbitration of Plaintiff's claims" (Dkt. #11 at p. 1). Plaintiff further argues that "the arbitration agreement is inadequate to compel Plaintiff to arbitrate this suit because there is no identification of Defendant as a party to it, explicitly or otherwise, and no adequate proof that Defendant is equivalent to Company or Sponsor or is a subsidiary, plan or electing entity" (Dkt. #11 at p. 2).

"Although there is a strong federal policy favoring arbitration, 'this federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.'" *Will-Drill*, 352 F.3d at 214 (quoting *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). "Because the FAA is 'at bottom a policy guaranteeing the enforcement of private contractual arrangements,' we look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (quoting *Mitsubishi Motors*, 473 U.S. at 626). "In determining whether an agreement to arbitrate exists, [a court] appl[ies] 'ordinary contract principles.'" *Will-Drill*, 352 F.3d at 214 (quoting *Fleetwood*, 280 F.3d at 1073).

Ultimately, the parties' primary point of contention regarding the existence of an agreement to arbitrate is whether Defendant is a party to the Plan. The Plan, which Plaintiff signed before his employment with Ewing Buick Company began, includes the arbitration agreement that is, seemingly, undisputed as governed by the Federal Arbitration Act.[1] The Court will therefore

---

[1] Plaintiff does not dispute that the arbitration agreement between himself and Ewing Buick Company is valid under Texas contract principles.

address whether Defendant is able to enforce the arbitration agreement, assuming a valid agreement exists, at the outset of the Court's analysis.

### a. Defendant as a Party to Arbitration Agreement

Plaintiff relies upon, and Defendant concedes, the fact that Defendant is not the original signatory on the Plan. Rather, the Plan was signed on September 16, 2002 by Plaintiff and Nita Moore ("Moore"), the former Human Resources Manager for Ewing Buick Company. Thus, absent a provision contained within the Plan or a rule of law allowing Defendant to become a party to the agreement, Defendant has no ability to enforce the arbitration agreement.[2] The Court must therefore determine whether Defendant is a party to the Plan—either through the language of the Plan or by operation of law.

The Plan defines "Company" as:

> [The] Sponsor and every subsidiary of Ewing Automotive Group, any electing entity, and all of their officers, directors, employees, and agents. 'Company' also includes every plan of benefits, whether or not tax-exempt, established or maintained by any such corporate entity, and the fiduciaries, agents and employees of all such entities. 'Company' also includes the successors and assigns of all such persons and entities. Provided, however, that in the case of an electing entity, 'Company' shall include the entity only to the extent provided in the entity's agreement to be bound by the Plan

(Dkt. #9, Exhibit 1 at p. 7). Defendant cites to the provision stating that "company . . . includes the successors and assigns of all such persons and entities" to support its argument that it is a party to the Plan (Dkt. #9, Exhibit 1 at p. 7) (internal quotation marks omitted). Plaintiff claims that the Plan only has two signatories: Plaintiff and "an entity entitled Company, not including Defendant" (Dkt. #11 at p. 1). Plaintiff appears to predicate his argument on his contention that no admissible evidence was introduced proving that "Ewing Automotive Group was the assumed name of the

---

[2] Neither party claims that Defendant could enforce the agreement absent a finding that Defendant is, in fact, a party to the Plan.

6

predecessor of Defendant, and then is an assumed name of Defendant" (Dkt. #11 at p. 2). Essentially, Plaintiff argues that Defendant's reliance upon an "assumed name connection theory" is misplaced. However, the Court is convinced that Defendant is not asserting an assumed-name theory; rather, Defendant is arguing that its status as a successor to Ewing Buick Company—the original signatory—entitles it to enforce the arbitration agreement in its own right. The Court must therefore first decide whether Plaintiff is, in fact, a successor to Ewing Buick Company.  If so, the Court must then analyze whether the Plan or operation of law permits Defendant to enforce the agreement.

### i. Defendant as Successor to Ewing Buick Company

No dispute appears to exist that Ewing Buick Company was the original signatory of the Plan.  No dispute further appears to exist that Ewing Buick Company was bound by the arbitration agreement contained within the Plan. Rather, the dispute arises as to whether Defendant garnered the rights of Ewing Buick Company regarding the Plan. Defendant contends that because Ewing Buick Company converted into Defendant under Texas law, it became a party to the agreement. Because Defendant asserts that "[u]pon th[e entity conversion of Ewing Buick Company to Defendant], [Plaintiff] became an employee of the Ewing Buick Company successor entity, which is Defendant[,]" and "[a]t the time of entity conversion, pursuant to the terms of the [Plan], Defendant . . . became a party to that agreement between Ewing Buick Company dba Ewing Automotive Group and [Plaintiff], by virtue of its status as successor to Ewing Buick Company[,]" (Dkt. #9 at p. 7). The Court will therefore address the effect of conversion on Defendant's status as successor to Ewing Buick Company.

Chapter 10, subchapter C of the Texas Business Organizations Code ("TBOC") governs the conversion of entities.  *See* TEX. BUS. ORGS. CODE §§ 10.101–.109.  Under the Code, "[a]

domestic entity may convert into a different type of domestic entity or a non-code organization by adopting a plan of conversion." *Id.* at § 10.101(a).[3] In the present case, the Certificate of Conversion certified by the Texas Secretary of State converted a corporation, Ewing Buick Company, into a limited partnership, Defendant. "When a conversion takes effect[] . . . all liabilities and obligations of the converting entity continue to be liabilities and obligations of the converted entity in the new organizational form without impairment or diminution because of the conversion." *Id.* at § 101.106(3). Thus, Ewing Buick Company "did not cease to exist upon conversion to" Defendant "under Texas law." *Gunda Corp., LLC v. Yazhari*, No. 14-12-00263-CV, 2013 WL 440577, at *6 (Tex. App.—Houston [14th Dist.] Feb. 5, 2013, no pet.) (mem. op., not designated for publication); *see* TEX. BUS. ORGS. CODE § 10.106(3) (stating that "all liabilities and obligations of the converting entity continue to be liabilities and obligations of the converted entity in the new organizational form without impairment or diminution because of the conversion"). Because Ewing Buick Company did not cease to exist under Texas law, Defendant essentially exists as an extension of Ewing Buick Company. Thus, Defendant "may enforce the arbitration agreement to the extent that the parties formed an agreement." *Id.*

Ultimately, Defendant is an extension of Ewing Buick Company. Ewing Buick Company and Defendant are, in all regards, the same entity. Pursuant to the Certificate of Conversion and the effects of conversion on business entities under the TBOC, Defendant may enforce the arbitration agreement. The Court therefore need not determine whether Defendant is a "successor" of Ewing Buick Company.[4]

---

[3] Neither party has asserted that Defendant or Ewing Buick Company are non-code entities. Thus, the Court looks to the relevant code section regarding entities subject to the Code.

[4] Plaintiff cites several cases to support his position that Defendant is not a party to the Plan. However, the explanatory sentences preceding the cases shows why the cases are distinguishable: "[the] strong judicial policy against enforcement of arbitration agreements against plaintiffs by non-parties to those agreement . . . is true even if, as here, a party seeking to enforce the agreements are arguably related to the entity with which an agreement was originally made" (Dkt. #11 at p. 4). However, Defendant is not arguably related to Ewing Buick Company—it is Ewing Buick

8

### ii. Is Defendant Party to Plan

The Court is convinced, per the analysis above, that Defendant is a party to the Plan. Ewing Buick Company filed a certificate of conversion with the Secretary of State under the Texas Business Organizations Code. Thus, for purposes of Texas law, Ewing Buick Company did not cease to exist, but rather converted into Defendant. Defendant therefore retains all rights and obligations of Ewing Buick Company, including the Plan.

Because Defendant is a party to the Plan, the Court will now address whether the claim at issue is covered by the arbitration agreement. *See IQ Prods.*, 871 F.3d at 348.

## II. Whether Claims at Issue are Covered by Arbitration Agreement

Defendant argues that Plaintiff's claims are "plainly arbitrable under the arbitration agreement" because the agreement "unambiguously covers any controversy arising from the employment of Plaintiff and Defendant, as well as any other matter related to the relationship between [Plaintiff] and [Defendant]" (Dkt. #9 at p. 15) (internal quotations omitted).

Plaintiff contends that "[b]ecause the validity and enforceability of an arbitration agreement is a primary, threshold, critical basis for applying an arbitration agreement to a dispute, and Plaintiff validly denies the enforceability of the arbitration agreement sought by Defendant to be enforced, it is not necessary to address the aspects of Defendant's motion" regarding whether the claims at issue are covered by the arbitration agreement (Dkt. #11 at p. 2).

"When determining whether a dispute is covered by the scope of an arbitration agreement, the Supreme Court has held that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Jones v. Halliburton Co.*, 583 F.3d 228, 235 (5th Cir. 2009) (quoting *Safer v. Nelson Fin. Grp. Inc.*, 422 F.3d 289, 294 (5th Cir. 2005)). Further, "[t]he Supreme

---

Company. Plaintiff's reliance upon its "assumed-name" argument is misplaced, and the Court therefore finds the cited cases inapposite and unpersuasive.

Court has made it clear that the Federal Arbitration Act, 9 U.S.C. § 3, establishes a 'liberal policy favoring arbitration' and a 'strong federal policy in favor of enforcing arbitration agreements.'" *Personal Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 392 (5th Cir. 2002) (quoting *Texaco Exploration and Prod. Co. v. AmClyde Engineered Prod. Co., Inc.*, 243 F.3d 906, 909 (5th Cir. 2001)). "[A] valid agreement to arbitrate applies 'unless it can be said with positive assurance that [the] arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Id.* (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990) (internal citations and quotation marks omitted)).

The Plan includes a subsection regarding Application and Coverage. This section, in relevant part, states that

> [T]his Plan applies to any legal or equitable claim, demand or controversy, in tort, in contract, under statutory or common law doctrines to include future statutory or common law doctrines that do not exist as of the date of this policy, or alleging violation of any legal obligation, between persons bound by the Plan, including but not limited to claims, demands or controversies, which relate to, arise from, concern or involve in any way: . . . [(2)] the employment of an Employee, including the terms, conditions, or termination of such employment; [(3)] benefits and/or incidents of employment with the Company; or [(4)] any other matter related to the relationship between the Employee and the Company, Employee and fellow Employee including, by way of example and without limitation, allegations of: discrimination based on race, sex, religion, national origin or disability; sexual harassment; wrongful or retaliatory discharge; defamation; claims for compensation; or infliction of emotional distress

(Dkt. #9, Exhibit 1 at p. 8). Further, the Plan states, in another subsection, that "[a]ll disputes not otherwise settled by the Parties shall be finally and conclusively resolved under this Plan" and in accordance with "the National Rules for the Resolution of Employment Disputes as published by the American Arbitration Association" (Dkt. #9, Exhibit 1 at p. 8). The Plan also denotes that the "[p]roceedings under the Plan shall be the exclusive, final and binding method by which Disputes are resolved" and "the institution of a proceeding under this Plan shall be a condition precedent to

the intimation of any legal action (including action before an administrative tribunal with adjudicatory powers)" (Dkt. #9, Exhibit 1 at p. 10). While the Plain "is not intended to nor does it limit in any manner the rights of an employee to file a claim with the Equal Employment Opportunity Commission or the Texas Human Rights Commission[,]" the language contained within the Plan clearly requires arbitration before other adjudicatory proceedings (Dkt. #9, Exhibit 1 at p. 10).

Plaintiff brings claims for Defendant's alleged violations of the FMLA. Specifically, Plaintiff asserts that Defendant violated § 2614 of the FMLA, which states "that any eligible employee who takes FMLA leave shall be entitled upon expiration of such leave to be restored to the position of employment held by the employee when the leave commenced, or an equivalent position with equivalent benefits, pay, and other terms and conditions of employment" (Dkt. #1 at p. 2). Plaintiff further argues that Defendant violated §§ 2615(a)(1) and (a)(2) of the FMLA "by interfering with, restraining or denying Plaintiff's exercise of, or attempt to exercise, his right to leave under the FMLA and by terminating him so as to interfere, restrain and deny him the exercise of his right to leave under the FMLA, and discriminating against him for seeking to exercise his right to leave under the FMLA" (Dkt. #1 at p. 3).

The FMLA is a statute codified in Title 29, Chapter 28 of the United States Code. Because the FMLA is a statutory doctrine, it falls within the language found in the "Application and Coverage" section of the Plan (*See* Dkt. #9, Exhibit 1 at p. 8). Plaintiff's FMLA claims also undoubtedly relate to the employment of Plaintiff, including the termination of such employment. (*See* Dkt. #9, Exhibit 1 at p. 8). Further, the claims stem from the relationship between Plaintiff and the Company, including . . . allegations of: . . . wrongful or retaliatory discharge" (Dkt. #9, Exhibit 1 at p. 8). Additionally, Plaintiff's FMLA claims arguably arise out of "benefits and/or

11

incidents of employment with the Company" (Dkt. #9, Exhibit 1 at p. 8). Because Plaintiff's claims are brought pursuant to a statutory doctrine and involve the relationship between Plaintiff and his employer company, the Plan governs how those disputes are handled.

The Plan gives employees four options to pursue claims—the relevant option for the present case is arbitration.[5] Regarding the availability of arbitration, the Plan provides that "[i]f a dispute involves a legally protected right, . . . and has not been resolved in Options One, Two, or Three, [the employee] or the Company may request arbitration" (Dkt. #9, Exhibit 1 at p. 15). Importantly, "[w]hile [an employee] do[es] not have to proceed through each of the options in their exact numerical order, the Program is designed with multiple steps to maximize the possibility of resolution prior to Option four" (Dkt. #9, Exhibit 1 at p. 15). Ultimately, the only two legal processes allowed under the Plan are mediation and arbitration. The Plan does not provide an alternative by which Plaintiff may bring his claims in this Court. Because Plaintiff's FMLA claims fall squarely within the definition provided by the Plan, the Court must give effect to the arbitration agreement between the parties.

Plaintiff and Ewing Buick Company agreed to handle disputes via four options, the last being arbitration. Defendant is a converted entity and extension of Ewing Buick Company. The conversion caused no disruption in the Plan, and Defendant became bound after the conversion just as Ewing Buick Company was at the time of the Plan's signing. Because Defendant is a party to the Plan, and the Plan's plain language expressly covers the FMLA claims brought by Plaintiff, arbitration is proper.

---

[5] Option one is the open-door policy; option two is the conference; and option three is mediation.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Compel Arbitration (Dkt. #9) is hereby **GRANTED**.

It is further **ORDERED** that the litigation is stayed pending arbitration.

**SIGNED this 20th day of April, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE